FILED
United States Court of Appeals
Tenth Circuit

July 15, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RUDY ORLANDO CABRERA,

Defendant - Appellant.

No. 13-2209
(D. New Mexico)
(D.C. No. 2:13-CR-00330-ABJ-1)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Defendant and appellant, Rudy Orlando Cabrera, appeals his forty-one-month sentence imposed following his plea of guilty to one count of illegally

_____

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

reentering the United States following removal after a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a)(1), (a)(2) and (b)(2). His appointed counsel, Michael L. Brooks, has filed a brief arguing one issue on appeal, and invoking Anders v. California, 386 U.S. 738 (1967) with respect to the remaining issues Mr. Cabrera claims have appellate merit. Mr. Cabrera has filed a *pro se* response to that brief, and the government has filed a brief addressing the one issue Mr. Brooks avers is meritorious. For the reasons set forth below, we agree with Mr. Brooks that one issue deserves appellate review and the remaining issues provide no nonfrivolous basis for an appeal. We affirm Mr. Cabrera's conviction and sentence.

**BACKGROUND**

Mr. Cabrera is a native and citizen of Guatemala. He first came to the United States in 1989, at about the age of twenty. In 1990, he married a woman who is a United States citizen, and they have two children, both United States citizens. On July 13, 2001, Mr. Cabrera pled guilty in Colorado state court to theft of an ankle monitor, valued between $500 and $15,000, in violation of Colo. Rev. Stat. § 18-4-401. This theft occurred when Mr. Cabrera absconded from parole in an unrelated case and failed to return an ankle bracelet that was used for electronic monitoring. Mr. Cabrera was sentenced to four years' imprisonment

for the theft, which at the time was classified as a felony punishable by two to six years in prison.

In July 2004, the Colorado Department of Corrections paroled Mr. Cabrera to the custody of the Immigration and Customs Enforcement authorities. On October 6, 2004, following a hearing before an Immigration Judge ("IJ"), Mr. Cabrera was removed to Guatemala because of his Colorado theft conviction. The IJ apparently did not advise Mr. Cabrera that he was eligible to seek discretionary relief from removal under 8 U.S.C. § 1182(h), and Mr. Cabrera waived his right to appeal the IJ's decision.

Mr. Cabrera returned to the United States in 2005 and was charged with illegal reentry of a removed alien in the United States District Court in New Mexico. After he pled guilty, Mr. Cabrera was sentenced to twenty-four months' imprisonment. He was again removed to Guatemala on June 10, 2008.

In 2009, Mr. Cabrera again returned to the United States. He was, once again, charged with illegal reentry in the United States District Court in the Western District of Texas. Following his guilty plea, he was sentenced to forty-one months' imprisonment, followed by three years of supervised release. Mr. Cabrera was yet again removed to Guatemala on August 8, 2012.

On December 30, 2012, Mr. Cabrera returned to the United States for a final time. A United States Border Patrol agent discovered Mr. Cabrera was in the country illegally and arrested him in Sunland Park, New Mexico. He was

charged on February 6, 2013, with the instant offense of illegal reentry of a removed alien. He pled guilty on March 29, 2013.

In preparation for sentencing under the United States Sentencing Commission, Guidelines Manual ("USSG"), the United States Probation Office prepared a presentence report ("PSR"). The PSR calculated a total offense level of 13, which included a base offense level of 8 and an 8-level enhancement for the prior "aggravated felony," the 2001 Colorado theft conviction. With a criminal history category of VI, the USSG advisory sentencing range was thirty-three to forty-one months.

Mr. Cabrera filed a Sentencing Memorandum, which included objections to the PSR and requested a downward departure or variance. In particular, the Sentencing Memorandum argued that:

(1) the 2004 removal order should be declared invalid because the IJ failed to advise Mr. Cabrera of his right to seek discretionary relief from removal;

(2) Mr. Cabrera's 2001 Colorado theft conviction should be overturned because he received ineffective assistance of counsel because his counsel failed to advise him that his guilty plea could result in removal and failed to challenge the state's evidence of the value of the ankle monitor;

(3) the Colorado theft conviction should not be classified as an "aggravated felony" for purposes of sentence enhancement;

(4) Mr. Cabrera should not receive criminal history points for certain offenses listed in the PSR;

(5) the court should grant a downward departure under USSG § 2L1.2 Application Note 7, based on the seriousness of the theft conviction;

(6) the court should grant a downward departure under USSG § 2L1.2 Application Note 8, based on cultural assimilation;

(7) the court should grant a downward departure under USSG § 5K2.13, based on diminished capacity; and

(8) the court should grant a downward variance in light of the 18 U.S.C. § 3553(a) sentencing factors.

The district court held a sentencing hearing on November 12, 2013.  At the conclusion of the hearing, the court rejected all of Mr. Cabrera's arguments, adopted the PSR and sentenced Mr. Carera to forty-one months' imprisonment, at the top of the advisory Guidelines sentencing range.   Shortly thereafter, he was transferred to Texas where another district court revoked his supervised release in the 2009 case and sentenced him to twenty-one months' imprisonment, to run consecutively to his sentence in this case.

Mr. Cabrera's counsel argues that his sentence is substantively unreasonable.  Mr. Cabrera also seeks review of his arguments that his 2004 removal order and his 2001 theft conviction should be set aside; that his theft conviction does not qualify as an "aggravated felony" under USSG § 2L1.2(b)(1)(C); and that the district court erred in denying his downward departure requests.  Mr. Cabrera's counsel, Mr. Brooks, believes "that the prior removal order and theft conviction are not subject to collateral attack in this

proceeding, that Mr. Cabrera's theft conviction constitutes an 'aggravated felony' under the modified categorical approach, and that the Court lacks jurisdiction to review the denial of Mr. Cabrera's requests for downward departure." Appellant's Combined Op. Br. and Anders Br. at 10. He accordingly raises those issues under Anders.

## DISCUSSION

We consider first the single issue which Mr. Cabrera and his counsel agree presents a viable appellate issue–the substantive reasonableness of Mr. Cabrera's 41-month sentence. "[S]ubstantive reasonableness addresses whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." United States v. Damato, 672 F.3d 832, 838 (10th Cir.) (further quotation omitted), cert. denied, 133 S. Ct. 319 (2012). We review substantive reasonableness claims for abuse of discretion, id., "afford[ing] substantial deference to [the] district court[]." United States v. Smart, 518 F.3d 800, 806 (10th Cir. 2008). A sentence within the properly-calculated Guidelines range is presumed on appeal to be reasonable. United States v. Alvarez-Bernabe, 626 F.3d 1161, 1167 (10th Cir. 2010).

At sentencing, Mr. Cabrera argued for a sentence below the advisory Guidelines range, reiterating the grounds asserted in his Sentencing Memorandum. On appeal, he argues his sentence was unreasonable, averring that

"the extensiveness of Mr. Cabrera's family and cultural ties in the United States is a significant factor in evaluating the substantive reasonableness of his sentence"; his 2001 Colorado theft conviction was more than twelve years old at the time of sentencing; that theft conviction was relatively benign and would not today (under current Colorado law) be an aggravated felony; and "[a]lthough Mr. Cabrera developed a regrettable criminal record in the 1990s, he has not been convicted of any offense other than illegal reentry since 2001." Appellant's Combined Op. Br. and Anders Br. at 12-15.

The district court indicated its awareness of Mr. Cabrera's arguments: it observed that Mr. Cabrera "has led a turbulent life in the United States," and that "the facts and circumstances surrounding [his] arrests are concerning as well because so often [they] involved resistance and problems although strangely enough those . . . resistances were usually dismissed and a lesser charge is what resulted." Tr. of Sentencing Proceedings at 17; R. Vol. 3 at 17. The court further noted that Mr. Cabrera "has not maintained or been able to maintain contact with his family," but it observed that his family members "have, frankly, through the defendant's own machinations, . . . been without him and without his support for substantial periods." Id. at 18. Indeed, Mr. Cabrera "has been in custody for over eight years off and on." Id. The court stated that Mr. Cabrera's argument concerning cultural assimilation is "kind of a disingenuous argument just in the sense that [Mr. Cabrera] hasn't assimilated very well in the United States. . . .

-7-

[S]pending 8 years, 11 months, and 10 days in custody in various state and federal prison really doesn't reflect a history of assimilation." Id. at 21. We fully agree with that analysis.

In short, Mr. Cabrera has failed to rebut the presumptive reasonableness of his within-Guidelines sentence. We turn, then, to whether his counsel correctly characterized any remaining arguments as wholly frivolous and insubstantial under Anders. We note that, in analyzing these issues, we have engaged in our own thorough review of the record in this case.

The Supreme Court in Anders authorizes a defendant's lawyer to seek permission to withdraw from an appeal if, "after conscientious examination," the lawyer finds the appeal "wholly frivolous," Anders, 386 U.S. at 744.[1] Invoking Anders requires the lawyer to "submit a brief to the client and the appellate court indicating any potential appealable issues based on the record," and the client has an opportunity to respond to his attorney's arguments. United States v. Calderon, 428 F.3d 928, 930 (10th Cir. 2005) (citing Anders, 386 U.S. at 744).

Mr. Cabrera's counsel has identified four arguments which counsel believes are meritless, yet Mr. Cabrera apparently wishes to pursue. We agree with counsel that they provide no non-frivolous grounds for an appeal.

---

[1]Because Mr. Cabrera's counsel identifies one viable appellate argument, he has not sought to withdraw as counsel.

## I. Collateral attack on 2004 removal order:

Mr. Cabrera first argues the district court erred in rejecting his collateral attack on his 2004 removal order. He argues the order is invalid because the IJ erroneously failed to advise him that he was eligible to seek discretionary relief from removal under 8 U.S.C. § 1182(h).

Congress, however, "has imposed specific limitations on an alien's right to collaterally attack an underlying removal order for charges of illegal reentry." United States v. Chavez-Alonso, 431 F.3d 726, 728 (10th Cir. 2005). To collaterally attack a deportation order, an alien must show that "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceeding at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d); see Chavez-Alonso, 431 F.3d at 728. The alien bears the burden of proof. Chavez-Alonso, 431 F.3d at 728. Mr. Cabrera fails at each step.

First, Mr. Cabrera waived his right to appeal the IJ's removal order; we have held that "[a]n alien who knowingly waives the right to appeal an immigrations judge's order of deportation fails to exhaust administrative remedies under § 1326(d)(1)." Id. Mr. Cabrera argues that his failure to exhaust administrative remedies should be excused because his appeal waiver was premised on the IJ's failure to advise him of his eligibility for discretionary relief.

-9-

And we have stated that a failure to exhaust administrative remedies "may be excusable where the waiver of appeal is premised on constitutionally relevant misinformation conveyed by the immigration judge." Id. We have also held, however, that "'there is no constitutional right to be informed of the existence of discretionary relief for which a potential deportee might be eligible.'" Id. (quoting United States v. Aguirre-Tello, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc)); see also United States v. Adame-Orozco, 607 F.3d 647, 654 n.9 (10th Cir. 2010) ("[T]his circuit has held that an alien has no constitutional right to be informed of avenues of discretionary relief."). "Because the immigration judge was under no legal obligation to inform Mr. [Cabrera] of his eligibility for relief from deportation . . . , Mr. [Cabrera's] waiver was not premised on constitutionally relevant misinformation." Chavez-Alonso, 431 F.3d at 729.

Furthermore, Mr. Cabrera cannot show that the removal proceeding improperly deprived him of the opportunity for judicial review. Finally, he has established no fundamental unfairness in the entry of the deportation order. Thus, there is no question about the propriety of the district court's decision declining to invalidate Mr. Cabrera's removal order, and it provides no grounds for an appeal.

**II. Collateral attack on 2001 theft conviction:**

Second, Mr. Cabrera argues his 2001 Colorado theft conviction should be overturned (and therefore disregarded for sentencing purposes in the instant

conviction) because his counsel failed to advise him that his guilty plea could lead to removal and also failed to challenge the state's evidence concerning the value of the ankle monitor. He claims the ankle monitor was only worth $375, which would make his theft of it a misdemeanor, not a felony.

Mr. Cabrera's general challenge to the validity of his 2001 conviction is foreclosed by our decision in United States v. Delacruz-Soto, 414 F.3d 1158 (10th Cir. 2005). We there stated "that defendants convicted under 8 U.S.C. § 1326 cannot, in that criminal proceeding, challenge a prior aggravated felony conviction used to enhance the penalties under § 1326(b)(2), except on the ground that the defendant was denied counsel in that prior felony proceeding." Id. at 1160; see Custis v. United States, 511 U.S. 485 (1994). Mr. Cabrera makes no such argument concerning the 2001 theft conviction proceeding.[2] The district court therefore properly rejected an attack on the prior conviction in Mr. Cabrera's sentencing proceedings. This issue also presents no viable basis for an appeal.

### III.  2001 theft conviction as aggravated felony:

Third, Mr. Cabrera argues that, assuming his 2001 theft conviction cannot be set aside on other grounds (as discussed above), the conviction does not

---

[2]We note that the Supreme Court has stated that "constitutionally competent counsel would have advised [an alien] that his conviction for drug distribution made him subject to automatic deportation." Padilla v. Kentucky, 559 U.S. 356, 360 (2010).

qualify as an "aggravated felony" for purposes of USSG § 2L1.2(b)(1)(C). That provision specifies an eight-level increase in the defendant's offense level if the defendant illegally reentered the United States after a previous removal following a conviction for an "aggravated felony." The Guidelines incorporate the definition of "aggravated felony" used in 8 U.S.C. § 1101(a)(43). See USSG § 2L1.2, comment. (n.3(A)). That provision, in turn, defines "aggravated felony" as "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).[3]

As we have previously observed, "[t]his enhancement provision refers to the generic offense[] of theft," so "in determining whether a prior conviction warrants an enhancement as a theft offense . . . , the court must use the categorical approach set forth in Taylor v. United States, 495 U.S. 575, 600-02 (1990), and Shepard v. United States, 544 U.S. 13, 25-26 (2005)." United States v. Venzor-Granillo, 668 F.3d 1224, 1227 (10th Cir. 2012); see also United States v. Martinez-Hernandez, 422 F.3d 1084, 1086 (10th Cir. 2005). Under that approach, "a sentencing court determines whether a prior conviction requires application of a sentence enhancement by 'looking not to the particular facts of the prior conviction but to the terms of the underlying statute.'" Venzor-Granillo, 668 F.3d at 1228 (quoting Martinez-Hernandez, 422 F.3d at 1086).

----

[3]Because Mr. Cabrera was sentenced to four years in prison for the theft, it does not matter whether his offense is classifiable now as a misdemeanor or not, for purpose of its qualification as an "aggravated felony."

-12-

In certain situations, however, "application of the categorical approach requires courts to look beyond the terms of the statute of conviction." Id. Thus, "'[w]hen the underlying statute reaches a broad range of conduct, some of which merits an enhancement and some of which does not, courts resolve the ambiguity by consulting reliable judicial records, such as the charging document, plea agreement, or plea colloquy' to determine whether the defendant's prior conviction warrants an enhancement." Id. (quoting Martinez-Hernandez, 422 F.3d at 1086). That analysis is called the "modified categorical approach." Id.; cf. Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (holding that the modified categorical approach does not apply to statutes "that contain a single, indivisible set of elements sweeping more broadly than the corresponding generic offense.").

Mr. Cabrera argues that the application of the categorical approach should lead to the conclusion that his 2001 Colorado theft conviction does not warrant an eight-level enhancement as an aggravated felony. Specifically, he claims that the generic definition of "theft" requires that the defendant act without the consent of the property owner, whereas the Colorado theft statute under which he was convicted allows for a conviction even when the defendant had the property owner's consent.[4]

---

[4]It is a little unclear what approach Mr. Cabrera believes applies to his situation–categorical or modified categorical. He appeared to argue for a

(continued...)

The problem with Mr. Cabrera's argument is that, first, a modified categorical approach should apply and, second, under such an approach, his theft conviction satisfies all the elements of the generic offense of theft. The generic definition of "'theft offense' as it is used in 8 U.S.C. § 1101(a)(43)(G), is 'taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent.'" Id. at 1232 (quoting United States v. Vasquez-Flores, 265 F.3d 1122, 1125 (10th Cir. 2001)). As his counsel notes, the relevant Information charged Mr. Cabrera as follows:

> RUDY ORLANDO CABRERA, did unlawfully, feloniously, and knowingly obtain and exercise control over a thing of value, to-wit: ankle monitor, with the value of five hundred dollars or more but less than fifteen thousand dollars from BI, Inc., without authorization and by threat and deception and intended to deprive the owner permanently of the use and benefit of the thing of value.

2/16/2001 Information at 2.[5] And in his Plea Agreement, Mr. Cabrera admitted that he "did unlawfully, feloniously, and knowingly obtain and exercise control over . . . [the] ankle monitor . . . without authorization and by threat and

_____

[4](...continued)
modified categorical approach in his Sentencing Memorandum. At sentencing, his counsel stated as much, but then conceded that it was a "theft" conviction and did not argue it was not an aggravated felony. The district court did not, therefore, address that argument specifically, but assumed it was an aggravated felony.

[5]The Information and the Plea Agreement, which we cite, are not apparently a part of the record. Mr. Cabrera does not suggest that his counsel's representation of their contents is incorrect.

-14-

deception and intended to deprive the owner permanently of the use and benefit of the [monitor]." 7/13/2001 Waiver and Plea at 4. Thus, "the elements of the offense [Mr. Cabrera] pleaded guilty to, as set forth in [the information and] his plea agreement, substantially correspond to the elements of the generic offense of . . . theft." Venzor-Granillo, 668 F.3d at 1232. The district court clearly did not err in concluding that Mr. Cabrera's 2001 Colorado theft conviction constitutes an "aggravated felony" and in applying the eight-level enhancement provided by USSG § 2L1.2(b)(1)(C). Mr. Cabrera provides no argument in support of a viable appellate issue on this point.

**IV. Denial of requested downward departures:**

Mr. Cabrera claims the district court erred in refusing his requests for downward departures from the advisory Guidelines sentencing range based upon the seriousness of the 2001 Colorado theft conviction, his cultural assimilation, and his diminished capacity. Our court lacks jurisdiction to review the denial of a sentencing departure unless the "sentencing court unambiguously stated it did not have discretion to grant the downward departure on the grounds urged by [the defendant] at sentencing." United States v. Fonseca, 473 F.3d 1109, 1113 (10th Cir. 2007). The court made no such statement as to lack of discretion; rather, the court addressed and rejected Mr. Cabrera's arguments. Accordingly, this issue provides no basis for an appeal.

In sum, we agree with Mr. Cabrera's counsel that there is only one conceivably meritorious argument in support of an appeal of Mr. Cabrera's sentence. We have rejected that argument and explained why there are no other non-frivolous appellate issues.

## CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Cabrera's sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge